UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAGNE ANN NORD,<br><br>                            Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                            Defendant. | Case No. 3:13-cv-05023-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On April 8, 2010, plaintiff filed an application for disability insurance benefits, alleging disability as of April 1, 2010. See ECF #10, Administrative Record ("AR") 10. That application was denied upon initial administrative review on June 3, 2010, and on reconsideration on November 18, 2010. See id. A hearing was held before an administrative law judge ("ALJ") on January 25, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 29-63.

ORDER - 1

1     In a decision dated January 31, 2012, the ALJ determined plaintiff to be not disabled. See
2  AR 10-23.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals
3  Council on November 13, 2012, making the ALJ's decision the final decision of the
4  Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981.
5  On January 14, 2013, plaintiff filed a complaint in this Court seeking judicial review of the
6  ALJ's decision. See ECF #1.  The administrative record was filed with the Court on March 25,
7  2013. See ECF #10.  The parties have completed their briefing, and thus this matter is now ripe
8  for the Court's review.
9
10    Plaintiff argues the Commissioner's final decision should be reversed and remanded for
11 an award of benefits, or in the alternative for further administrative proceedings, because the ALJ
12 erred: (1) in failing to consider all of plaintiff's severe impairments; (2) in finding she did not
13 have an impairment that met or medically equaled the criteria of any of those contained in 20
14 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"); (3) in failing to properly assess her
15 credibility or consider her pain complaints; and (4) in assessing plaintiff's residual functional
16 capacity.  For the reasons set forth below, however, the Court disagrees that the ALJ erred in
17 determining plaintiff to be not disabled, and therefore finds that defendant's decision to deny
18 benefits should be affirmed.
19
20                                DISCUSSION
21    The determination of the Commissioner that a claimant is not disabled must be upheld by
22 the Court, if the "proper legal standards" have been applied by the Commissioner, and the
23 "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler,
24 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security
25 Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.
26

ORDER - 2

Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.     The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

Plaintiff argues the ALJ erred in finding that while she "was diagnosed with depression, the fact that she later reported that she only endorsed depressive symptoms because she thought she should undermines the credibility of that diagnosis," and therefore in determining that it was not a severe impairment. AR 14.  Specifically, plaintiff asserts the ALJ gave improper weight to her own self-report, and instead should have found her depression to be severe based on the diagnosis and findings of Silverio Arenas, Jr., Ph.D.  The Court finds, however, that the ALJ did not err in discounting Dr. Arenas's diagnosis and findings based on plaintiff's subsequent report, and that even if he did, such error was harmless.

In an early October 2010 evaluation report, Dr. Arenas assessed plaintiff with a number

ORDER - 4

of diagnoses, including a chronic, severe depressive disorder with major and psychotic features. See AR 303.  Dr. Arenas also gave plaintiff a global assessment of function ("GAF") score of 60-65 – indicating mild to moderate symptoms or difficulties in social, occupational or school functioning[2] – and further opined in relevant part as follows:

> Mental status examination noted mild-to-significant problems in the area of attitude/behavior, affect/mood, orientation, remote memory, recent memory, immediate memory, knowledge fund, and in attention/concentration, with other aspects being normal.  The Burns [Depression Checklist and Anxiety Inventory] scales suggested a severe level of depression and an extreme level of anxiety with related symptoms.  Overall, the client's abilities to reason and understand, attend/concentrate, remember, pace, persist, and to tolerate/manage stress are all adequately functional relative to the presenting problems, within her present limited/curtailed interactive environment, but would be dysfunctional outside of that, as in any competitive work situation beyond her present part-time employment. . . .

See 302-03.  In early June 2011, treating physician Ina R. Oppliger, M.D., commented:

> [Plaintiff] reported anxiety and depression.  When I ask whether depression might be contributing to her symptoms, she stated that she is not really depressed but so many physicians keep asking her about it that she thought she needed to mark it on the form. . . .

AR 499.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) at 34).  "A GAF score of 61-70 reflects mild symptoms or "some difficulty[in social, occupational, or school functioning], but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* at 30 (4th ed. 1994)).

ORDER - 5

642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need

ORDER - 6

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In his decision, the ALJ addressed Dr. Arenas's opinion concerning plaintiff's ability to function as follows:

> I assigned little weight to the opinion of Dr. Arenas because of his reliance upon the claimant's statements concerning her depression, which she later stated were made for reasons other than actually experiencing depression. Dr. Arenas opined that the claimant's abilities are all adequately functional relative to her present limited environment but would be dysfunctional outside of that (Ex. 6F/6). However, since the claimant's statements regarding her depression are less than credible, his opinion of her abilities based on believing her to be depressed are less persuasive.

AR 21. The Court finds it was not improper for the ALJ to reject the opinion of Dr. Arenas on the above basis, because plaintiff's subsequent self-report that she was not depressed but only indicated she was because she thought she should, clearly contradicts Dr. Arenas's finding of significant functional restriction due to depression. See Morgan, 169 F.3d at 601-02 (upholding rejection of physician's opinion that claimant had marked limitations in part on basis that other evidence of ability to function, including reported activities of daily living, contradicted that conclusion); Magallanes, 881 F.2d at 754 (finding ALJ properly rejected physician's opinion in part on basis that it conflicted with claimant's own subjective pain complaints).

ORDER - 7

Plaintiff points to other medical opinion source evidence from August and September 2010, in which she states she continued to endorse depression-related symptoms, and in which her depression was noted to be recurrent and severe and not well controlled, and also in which a referral for behavioral health was made. See ECF #15, p. 7 (citing AR 289-90, 339, 352).  But the mere presence of symptoms and existence of a recommendation for treatment, as well as a medical opinion that a recurrent, severe mental health condition is not well controlled, alone is insufficient to establish Listing-level severity, as it gives no indication as to the existence of actual work-related limitations.  That evidence, furthermore, still stands in stark contrast to plaintiff's subsequent report that she was not really depressed.  Plaintiff argues the fact that she reported this only one time undermines the ALJ's reliance on it over the above medical opinion source evidence.  But it was at least as reasonable for the ALJ to find plaintiff's report accurately represented how she viewed her mental health condition, and therefore that interpretation of the evidence in the record must be upheld. See Allen, 749 F.2d at 579.

Even if the ALJ could be said to have erred, however, such error is harmless.  This is because it would not have affected the ALJ's ultimate non-disability determination. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").  Specifically, the ALJ did not stop the sequential disability evaluation process at step two, but instead as discussed further below, went on to properly consider the impact of plaintiff's mental health condition on her ability to function at the later steps of that process. See AR 16-23; Hubbard v. Astrue, 2010 WL 1041553 *1 (9th Cir. 2010) (because claimant prevailed at step two and ALJ considered claimant's impairments later

ORDER - 8

in sequential analysis, any error in omitting those impairments at step two was harmless) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error in failing to list bursitis at step two harmless, where ALJ's decision showed any limitations posed thereby was considered later in sequential disability evaluation process); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ in failing to consider plaintiff's obesity at step two harmless, because ALJ did not err in evaluating plaintiff's impairments at later steps).[3]

II.     The ALJ's Findings at Step Three

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal the criteria of any of those set forth in the "Listings". See 20 C.F.R § 404.1520(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id. The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. See Tacket, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific

---

[3] Along these lines, the Court notes that as indicated above Dr. Arenas diagnosed plaintiff with several other mental health impairments, which the ALJ *did* find to be severe. See AR 13, 303. Thus, the mere fact that the ALJ did not find one of the impairments Dr. Arenas diagnosed – depression – to be severe hardly demonstrates harmfulness here, particularly considering the ALJ did not stop his evaluation at step two.

ORDER - 9

findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original).  However, "symptoms alone" will not justify a finding of equivalence. Id.  The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings).  This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

Plaintiff argues the ALJ erred in finding none of her impairments met or medically

ORDER - 10

equaled the criteria of Listing 12.04 (affective disorders).[4] See AR 14-16. Specifically, plaintiff asserts that in so finding, the ALJ failed to adequately review and discuss the medical evidence in the record supporting that finding. But to the extent the ALJ did so err, the Court again finds such error to be harmless. As noted above, an ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments," particularly where, as here, the claimant has not set forth any valid reasons as to why the Listing criteria have not been met or equaled. See Lewis, 236 F.3d at 514; Gonzalez, 914 F.2d at 1201. While plaintiff relies on the opinion of Dr. Arenas and her own testimony to argue the Listing 12.04 criteria have been met, as discussed above and in greater detail below, the ALJ did not err in discounting that evidence, and accordingly was not required to find plaintiff disabled at this step of the sequential disability evaluation process based on that evidence.

III.   The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what

---

[4] It appears plaintiff also may be asserting the ALJ erred as well in finding none of her impairments met or medically equaled Listing 1.04 (disorders of the spine). See AR 14; ECF #15, p. 15. To the extent that she is, the Court finds that assertion to be without merit, as she fails to set out any argument or point to any evidence in the record establishing such to be the case. See Lewis, 236 F.3d at 514.

ORDER - 11

testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ discounted plaintiff's credibility in part because her statements concerning her symptoms and limitations "are not fully corroborated by the treatment record," and because "[t]he objective medical evidence was consistently out of proportion to the claimant's complaints and allegations of disability." AR 17; see also AR 18-19.  A determination that a claimant's subjective complaints are inconsistent with objective medical evidence can satisfy the clear and convincing requirement. See Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Plaintiff does not specifically challenge this stated reason for finding her to be not fully credible.[5]  In addition, as discussed above, she has not established any reversible error in the ALJ's evaluation of the objective medical evidence in the record.

The ALJ also discounted plaintiff's credibility on the basis of her work activity:

> . . . [H]er successful performance of work duties on a consistent basis,

---

[5] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

ORDER - 12

> although no longer at the substantial gainful activity level, indicate [sic] her remaining level of functioning is greater than she has alleged.
>
> . . . While she . . . stated that the pain has worsened over the past year, the claimant has also continued to work at almost the same level of earnings. Although she testified her duties have also been adjusted, the record does not support that this was medically necessary or that she is not capable of performing work as limited [by the undersigned] in the residual functional capacity finding. The fact that the impairments have not prevented the claimant from working successfully, indicates her ability to perform work activities and undermines her claims.

AR 19. Plaintiff argues the record shows her employer made significant accommodations for her, and fails to support the ALJ's statement that she continued to work at almost the same level of earnings that she had before. But while plaintiff alleged an onset date of disability of April 1, 2010, she herself points out that her earnings for that whole year still amounted to a significant proportion of those she had for the year before. See ECF #15, p. 19 (citing AR 136).[6] In addition, although plaintiff testified that she did not have to do a lot for her employer (see AR 41), she still was able to work for six and a half hours three days a week (see AR 46), and earn at the above level for a significant period of time after her alleged onset date of disability. Thus, even though the evidence here may be somewhat ambiguous, that ambiguity is solely the ALJ's responsible to resolve. See Allen, 749 F.2d at 580; Sample, 694 F.2d at 642.

> The ALJ next found plaintiff to be not fully credible because:
>
> . . . the claimant's activities indicate greater abilities than she has claimed. She sought care after being injured moving boxes and furniture in September 2010 (Ex. 12F/5). Also in that month, she reported an injury after bowling (Ex. 14F/8). These activities reflect a level of functioning that is not consistent with the claimant's claims of disability . . .

AR 19. Here too, plaintiff does not challenge this specific reason for discounting her credibility,

---

[6] Plaintiff states in her opening brief that she "reported no earnings" in 2011, but at the hearing she testified that she works six and a half hour days three days a week, thereby indicating she continued to work at least through the date of the hearing, and presumably continue to receive earnings . See AR 46.

ORDER - 13

and the Court, furthermore, finds it to be a proper one. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (ALJ may discount claimant's credibility where claimant's activities of daily living "contradict his [or her] other testimony").

The ALJ further noted plaintiff did not increase her physical activity, despite one of her treating physician's having recommended that she do so, "indicating that her impairments have not been as debilitating as she claims." AR 19; see Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting claimant's credibility in part due to lack of consistent treatment, noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert a good reason for not following prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony"). Again, plaintiff does not specifically challenge this stated reason for discounting her credibility, nor does the record show she had a legitimate reason for not following the above recommended treatment.[7]

The ALJ also discounted plaintiff's credibility for the following reasons:

> Also shedding doubt on the accuracy of the claimant's allegations are numerous inconsistencies in her reports to various treating and examining physicians. For example, she reported to Dr. Arenas that she avoids driving (Ex. 6F/4). Yet, she testified at the hearing that she drives herself to work 35 to 40 minutes each way. She had to ask for help once in the past year, but the inconsistent report undermines her credibility as does the fact that she is able to persist at work plus a long commute regularly. She also reported to Dr. Arenas that she had a stressful childhood (Ex. 6F/2) while she reported elsewhere that it was happy. Finally, she reported to clinicians that she worked half-days while testifying that she works 6.5 hours at the hearing.

AR 19-20. Here too the ALJ did not err in discounting plaintiff's credibility on this basis. See

---

[7] Carmickle, 533 F.3d at 1162 (improper for ALJ to discount credibility on basis of failure to pursue treatment when claimant "has a good reason for not" doing so).

ORDER - 14

Smolen, 80 F.3d at 1284 (ALJ may consider claimant's inconsistent statements). With respect to driving, plaintiff argues her statements are not contradictory, as "she also testified she doesn't go shopping, to restaurants or movies," indicating "she avoids driving as much as possible, and only does it for her part time job." ECF #15, p. 18. But even if this interpretation of the evidence is reasonable, so too is the ALJ's and thus the latter's must be adopted. Further, plaintiff's assertion that she only drives to get to her part-time job itself shows that she is capable of doing so contrary to her report to Dr. Arenas.

In addition, the ALJ found as follows concerning the claimant's credibility:

> Finally, the record includes statements by the claimant's clinicians suggesting the claimant was engaging in possible misrepresentation or exaggeration. Specifically, Dr. [Gordon] Rennie noted that diagnosing the claimant was challenging and that "there is apparently some secondary gain i.e. disability application." (Ex. 18F/22). She told Dr. Oppliger that "she is not really depressed but so many physicians keep asking her about it that she thought she needed to mark it on the form." (Ex. 20F/2). This indicates the claimant is reporting symptoms she does not actually experience or believe she has. This undermines her credibility. Dr. Cooper also indicated that the claimant tended to dwell on her issues (Ex. 3F/2). The claimant testified that her condition was caused by brain inflammation, which is not supported in the record. Consistently, the difficulty her physicians have had throughout the record in finding causes or solutions for her complaints, along with the claimant's willingness to endorse symptoms perhaps for secondary gain purposes, is reflective of her lack of credibility. . . .

AR 20. The ALJ may consider motivation and the issue of secondary gain, as well as the "tendency to exaggerate," in rejecting symptom testimony. See Tonapetyan, 242 F.3d at 1148; Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Although plaintiff asserts the record contains only one reference to secondary gain by a medical source, as noted by the ALJ other evidence in the record supports an inference of improper motives on her part. Further, plaintiff offers no basis for doubting the credibility of the medical source who made the comment, or the accuracy of that

ORDER - 15

comment in noting what was reported to him.

Citing Ratto v. Secretary, Dept. of Health and Human Services, 839 F.Supp. 1415, 1428-29 (D. Ore. 1993), plaintiff argues it was improper for the ALJ to discount her credibility on this basis, because by definition every claimant who applies for disability benefits does so for the purpose of obtaining them. But in Ratto, the ALJ discounted the claimant's credibility in part solely because she had applied for disability benefits. See id. In this case, however, the ALJ, as noted above, set forth a number of specific reasons why the record suggests exaggeration and secondary gain motive on plaintiff's part, separate and distinct from the mere fact that she has applied for disability benefits. Accordingly, even though the ALJ may have provided other reasons for not finding plaintiff to be credible that are not well supported in the record, this does not render the ALJ's credibility determination invalid, as it is supported by substantial evidence in the record in light of the other valid reasons discussed above. See Tonapetyan, 242 F.3d at 1148; Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").[8]

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at

---

[8] As noted above, separate from her arguments concerning the ALJ's credibility determination, plaintiff also argues the ALJ failed to properly consider her pain complaints, asserting "the ALJ gave little weight to" them, "dismissing her allegations and the severity of them in part during" that determination. ECF #15, p. 22. Thus, as plaintiff herself notes, the ALJ rejected her pain complaints at the same time he rejected her complaints regarding her other alleged symptoms. See AR 16-20. For the same reasons discussed above that the ALJ did not err in finding plaintiff to be not fully credible with respect to her subjective complaints, therefore, so too did the ALJ not err in finding the same to be the case with respect to her allegations of disabling pain.

ORDER - 16

step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform light work, meaning she can lift twenty pounds occasionally and ten pounds frequently . . . She can no more than occasionally climb ramps or stairs and cannot climb ladders, ropes, or scaffolds.  She must avoid concentrated exposure to hazards such as machinery or heights.  She can perform low stress work, which means a routine and predictable work setting that does not require exercise of more than rudimentary judgment.**

AR 16 (emphasis in original).  Plaintiff argues the above RFC assessment is not supported by substantial evidence in light of the medical evidence in the record, including the opinion of Dr. Arenas, and her own testimony.  Because as discussed above the ALJ did not err in evaluating that evidence or testimony, however, plaintiff has failed to establish any err here as well in the ALJ's assessment of her residual functional capacity.  Accordingly, plaintiff has failed to show any reversible error in the ALJ's decision overall.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded

ORDER - 17

plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 28th day of February, 2014.

Karen L. Strombom
United States Magistrate Judge

ORDER - 18